---

SWALLOW, The (STAPP v.). See Case No. 13,305.

---

## Case No. 13,667.

### The SWAN.

[3 Blatchf. 285.] [1]

Circuit Court, S. D. New York. June 13, 1855.

NAVIGABLE WATERS — OBSTRUCTION TO — SUNKEN VESSEL—TUG AND TOW—LIGHTS.

1. Where a tow was sunk through the fault of a propeller, which came in collision with her, and without any fault on the part of the tug which was towing the tow: Held, that the right of property in the tow was still in her original owner, or, if he chose to abandon her, he could only look to the propeller for her loss, and not to the tug, and the propeller would, in such case, have the right to raise and repair the tow.

2. Where, in such case, a vessel ran against the sunken tow and was lost, in the night, because her position was unknown, and was not marked by any light; Held, that the tug was not responsible for such loss, as her control over the tow ceased when the tow sank, and especially as the captain and crew of the tow were on board of the tow when she sank.

3. The tug was under no obligation to place a light at the point where the tow was sunk, or to raise the tow.

4. Whether either the owner of the propeller or the owner of the tow was bound to remove

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

the obstruction, or to indicate its position by a light, quere.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, against the steamboat Swan, to recover damages for the loss of the schooner H. H. Day and her cargo. After a decree by the district court, dismissing the libel [case unreported], the libellants appealed to this court.

James R. Whiting, for libellants.

Cambridge Livingston, for claimants.

NELSON, Circuit Justice. The H. H. Day was damaged and sunk on the Raritan river, in New Jersey, on the night of the 6th of November, 1850, some four miles below New Brunswick, having run against a sunken canal-boat lying in the bed of the river, while on her way to Brooklyn, New York. The canal-boat was so far under water that persons navigating the river at night were unable to see where she lay.

The steam-tug Swan, belonging to the claimants, left New Brunswick on the same evening with the H. H. Day, but some hours before her, for the city of New York, with six canal-boats and barges in tow, laden with coal and other articles; and, while proceeding down the river, met the propeller Erie coming up, which came in collision with one of the canal-boats with such violence that she immediately bilged and sank. The collision was owing to the negligence and carelessness of the propeller, without any fault on the part of the tug. The canal-boat thus sunk was the one upon which the H. H. Day, the vessel of the libellants, ran a few hours afterwards, occasioning the loss complained of in the libel. The captain and crew of the canal-boat were on board during the navigation of the tow, and at the time of the collision with the propeller, but were under the orders and direction of the master of the tug. According to the terms of the contract entered into by the master of the tug before the canal-boat was taken in tow, she was to be towed at the risk of her owners. After the collision, the captain and crew went on board of the propeller, and returned to New Brunswick.

The ground upon which the libellants seek to recover for the loss of the schooner and her cargo, occasioned by her running upon this sunken canal-boat, is the negligence and want of care on the part of the tug, in not placing a buoy or boat at the place with a light, or in some other way giving reasonable warning of the danger to vessels navigating the river. The court below dismissed the libel, holding that no such duty, under the circumstances, was imposed upon the tug. In this opinion I am inclined to concur.

It is conceded that the canal-boat was separated from the tug and sunk without any fault on the part of the tug, and wholly by the wrongful act of the propeller. The tug, therefore, was not responsible for the act of sinking the boat, and, of course, not for the loss of the boat itself or its cargo. If the owner of the boat chose to abandon it, and look to the wrongdoer for the entire loss, he could look only to the propeller. That was a question exclusively between those parties. No duty attached to the tug in respect to it. The right of property in the boat still remained in its owner after it was sunk, and he might, in his discretion, immediately have taken the proper measures to raise and repair it; or, if he elected to abandon it, and to look to the colliding vessel for damages, the owners of that vessel might, if they deemed it better for their interest, in the misfortune that had occurred, assume the responsibility and expense of raising the boat. In the case of a collision, which results in the sinking of the injured vessel, there is oftentimes great difficulty in arriving at the actual damage sustained, in the absence of any effort to raise her. She may have been so broken and submerged, as to render any effort to restore her hopeless, and thus the entire loss of vessel and cargo would be the measure of damages. She may also be in such a situation as to be recovered from her sunken condition at an expense that would diminish the extent of the loss otherwise occurring. In such a case, the value of the vessel would not be the measure of damages to be awarded; but the measure would be the expense of the raising of the vessel, and of the repairs, together with reasonable compensation for loss of use in the mean time. And, where the sunken vessel is abandoned by its owner, with the design of looking to the colliding vessel for the whole value, it may sometimes be for the interest of the owner of that vessel to admit his responsibility as claimed, and take measures to raise and repair the vessel for his own benefit. At all events, this is a right which I think properly belongs to him, if he chooses to assert it. Therefore, the right of property in the sunken canal-boat was still in its original owner; or, if he chose to abandon it, the right to raise and repair it might be exercised by the party responsible for the loss, which in this case was the propeller. In no event had the tug any interest in the matter.

Then, which of these parties, if any one of them, was under obligation to place a light at the point of obstruction on the river, occasioned by the sinking of the boat? Upon general principles, the duty would seem naturally to belong either to the proprietor of the boat, or to the party guilty of the wrong of sinking it in the public highway. Whether it would devolve upon either, it is unnecessary to determine in this case. The case of Rex v. Watts, 2 Esp. 675, raises a doubt as to the duty of the owner, under the circumstances stated. The court there held, that the owner of a vessel sunk in a navigable river

by misfortune or inevitable accident, without his fault, was not liable to an indictment for a public nuisance for not removing the obstruction. This decision necessarily excludes the idea of any duty resting upon the owner, in such a case, to remove his sunken vessel; and raises, at least, a pretty strong implication, that he would not be bound to take any other measure of precaution to prevent the injurious effect upon the navigation.

Whether the injury to the libellants' schooner, in running upon the sunken boat, was not a consequence too remote, as resulting from the collision, to charge the vessel in fault in that transaction, is a question upon which much might be said, and which I do not intend to determine.

But, be all this as it may, I am satisfied that the tug, in this case, cannot be charged with the injury, upon any sound or consistent principle. Her owners had no other interest in, or control over the canal-boat, than what arose out of the contract to tow her to her place of destination. When they had discharged that duty, their obligations ceased, especially as the captain and crew of the tow accompanied her in the navigation. On the termination of that contract, the control and disposition of the boat belonged exclusively to her captain, as she was no longer subject to the orders or direction of the master of the tug. It is difficult to see where the responsibility of the owners of the tug would cease, if it be carried beyond the scope and limit of their contract. There can be no hardship, as it respects third persons or the public, in confining it to this limit, for, on the termination of the contract, and of the consequent responsibility of the owners of the tug, that of the owner of the tow begins, or, rather, in judgment of law, is resumed, the power of the tug over the tow, by virtue of the contract for towing, having ceased.

It is said, that the owners of the tug should be held responsible for the obstruction in this case, as they were instrumental in producing it, having towed the boat to the place where she was sunk. But, this was an act not only lawful in itself, but an act procured by the owners of the canal-boat. There is nothing, therefore, in this circumstance that can, upon any consistent reasoning, shift the responsibility from the owner of the boat to the owners of the tug. But, the true answer to this suggestion is, that the circumstance of the boat's being on the river at the place where she was run into and sunk, was the fault of no one. She had a right to be there. And I may add, also, as is admitted by the facts of the case, that it was no fault of either of these parties that she was at the bottom of the river. That was the fault of the vessel that ran her down.

The argument that would make it the duty of the tug, in this case, to place lights at the place of the sunken boat, to warn vessels of the danger, must, it seems to me, be car-

ried to the length of making her responsible for raising the boat and removing the obstruction. For, I do not see how that duty is to be distinguished from the one claimed, of keeping up lights or some other notice of the danger, so long as the obstruction continues. This duty, as to lights, can be maintained only upon the idea that the tug is responsible for the obstruction. I cannot think her thus responsible, where she is neither the owner of the thing constituting the obstruction, nor in any way in fault in placing it there. Decree affirmed.